IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ROBERT DONATELLI,            )
                    Plaintiff    )
                             )
        vs.                  )        Civil Action No. 08-1111
                             )        Judge Terrence F. McVerry
JAMES C. WARMBRODT, Esquire; )
WELTMAN, WEINBERG & REIS CO., )
L.P.A.; JOHN DOE, One Up; JANE DOE, )   ECF No. 66
One Up,                      )
                    Defendants )


OPINION

TERRENCE F. McVERRY, District Judge.

        The Court considers here the Motion for Summary Judgment [ECF No. 66] filed by

Defendants, James C. Warmbrodt ("Warmbrodt"),  and the firm, Weltman, Weinberg, & Reis,

Co., L.P.A. ("WWR" or "the firm") (collectively, "the Defendants") in response to federal and

state claims filed against them by Robert Donatelli ("Donatelli" or "the Plaintiff").[1]  In Counts

---

[1] In the Complaint, Donatelli also sued fictional defendants, John Doe, One Up, and Jane Doe, One Up,
whom he described as "employees, servants or agents, supervisors or managers and/or licensed
attorneys" employed by . . . WWR . . . in a respondeat superior and/or apparent authority type of
relationship as debt collectors."  [ECF No. 65-1 at ¶ 9].  On March 24, 2009, the Court issued an Order to
Show Cause [ECF No. 11] returnable on or before April 7, 2009, directing the Plaintiff to show cause
why the case should not be dismissed as to these Defendants for lack of service.  Donatelli failed to
comply with this Order.  At this juncture, the Court will formally dismiss the remaining John and Jane
Doe Defendants, pursuant to Fed. R. Civ. P. 21.  This Rule provides that "[o]n motion or on its own, the
court may at any time, on just terms, add or drop a party."  Id.  "Use of John Doe defendants is
permissible in certain situations until reasonable discovery permits the true defendants to be identified."
Blakeslee v. Clinton County, No. 08-4313, 2009 WL 2023554 at *1 (3d Cir. July 14, 2009) (citing
Klingler v. Yamaha Motor Corp., U.S.A., 738 F. Supp. 898 (E.D. Pa. 1990)).  See also Scheetz v.
Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed
 . . . if discovery yields no identities.").

One through Three of the five count pro se Complaint [ECF No. 1],[2] Donatelli alleges violation of multiple sections of the federal Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 et seq., the Fourteenth Amendment to the United States Constitution, the Pennsylvania Fair Credit Extension Act, 73 Pa. Cons. Stat. Ann. § 2270.1 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Act , 73 Pa. Cons. Stat. Ann. §§ 201-1 et seq. Count Four is premised on alleged violations of the Pennsylvania Uniform Commercial Code, Pa. Cons. Stat. Ann. §§ 1101 et seq. In Count Five, Donatelli alleges that the Defendants, in addition to violating the statutes already listed, transgressed state criminal laws which prohibit the making of false or misleading statements to the public for the purpose of promoting the purchase or sale of services, 18 Pa. Con. Stat. Ann. § 4107(a) (5); securing the execution of documents by deception in violation of 18 Pa. Con. Stat. Ann. § 4114, and engaging in various unlawful collection agency practices in violation of 18 Pa. Con. Stat. Ann. § 7311 et seq. The Defendants' Motion for Summary Judgment on the federal constitutional and statutory claims will be granted, and the state claims will be dismissed without prejudice.

## I.     BACKGROUND

Donatelli alleges that on October 23, 2006, he received a letter from Union Plus Credit Card Program, requesting payment for charges made on the card. [ECF No. 1 at ¶12]. [3] About two weeks later, he received two phone calls in one day at his work number from a person claiming to be an employee of Household Credit Service ("Household"), inquiring about the outstanding credit card balance. [Id. at ¶ 13]. On November 10, 2006, Donatelli sent Household

---

[2] Although at first glance, Donatelli's Complaint [ECF No. 1] appears to contain eight counts in actuality, there are only five counts. The counts are misnumbered, in that "Count Three" at p. 13 is followed by "Count VII" at p. 15. The Court refers to the counts as though they had been numbered sequentially.

[3] The actual letter is not included in the record.

"a Notice and Demand for Validation And Adequate Assurance of Performance." [Id. at ¶14].[4] In December 2006, WWR in Columbus, Ohio, sent Donatelli a letter "demanding payment of the account." [Id. at ¶ 15]. On or about December 20, 2006, Donatelli responded by sending WWR a Notice of Dispute. [Id. at ¶16]. In March 2006, Union Plus Credit Card Program ("Union Plus") sent Donatelli a letter stating that it had learned from a credit reporting service that Donatelli was disputing the account: "Please note that we have received and processed multiple disputes regarding this Account and based on our investigations, we are reporting the account status to all three Major credit reporting agencies [that the] Account [is] 150 days past due date." [Id. at ¶ 17].

On or about April 6, 2007, WWR sent Donatelli a poor quality copy of a statement from Union Plus in response to his December 2006 Notice of Dispute. [Id. at ¶18]. In June 2007, Union Plus contacted Donatelli, telling him that creditor HSBC Bank Nevada, N.S. ("HSBC") had learned via TransUnion that Donatelli had filed a Notice of Dispute. The letter then stated, "Please note that we have received and processed multiple disputes regarding this account and based on our investigations, we are reporting the account status to all three major credit reporting agencies as follows: Reporting as a charge off." [Id. at ¶19].

In August 2007 a Complaint [ECF No. 41-3] was filed against Donatelli in the Court of Common Pleas of Mercer County, Pennsylvania by Warmbrodt and WWR, acting as debt collectors, on behalf of their client, creditor, "HSBC". According to the Complaint, Donatelli applied for, received, and used a credit card issued by HSBC, failed to make monthly payments, and, as of June 22, 2007, had accumulated a balance due of $16,532.98, plus interest. [Id. at ¶¶ 1-5]. The Complaint was signed by Warmbrodt, and contained a statement that WWR "is a debt

---

[4] This document does not appear in the record.

collector attempting to collect this debt for [its] client, and any information obtained [would] be used for that purpose." [Id. at 4]. Attached to that Complaint was an "IBEW Ultra Platinum Mastercard Statement." [Id. at 5]. Donatelli was directed to send payment to "Union Plus Credit Card" at an address in Baltimore, MD. Also attached to the Complaint was a verification by Charmain Hopper, who was identified as "Manager of HSBC." [Id. at 6]. She attested that she was "duly authorized to make the verification, and that the facts set forth in the foregoing Complaint [were] true and correct  the best [sic] of [her] knowledge, information and belief." [Id.]. Donatelli filed a pro se answer – as opposed to Preliminary Objections - to the state court complaint. [ECF No. 41-4].

In September 2007, HSBC sent Donatelli a letter identical to the one it had sent in March 2007, stating again that  it would "report[   ] the account status to all three major credit reporting agencies . . . as a charge off." [ECF No. 1 at ¶ 22].

Donatelli filed a twenty-seven page pro se Complaint [ECF No. 1] in this Court in August 2008. Nine months later, he filed a Motion to Extend Time to Obtain Counsel, Motion to Stay, so that he could confirm that he had retained legal counsel. [ECF No. 12]. The Court gave him until June 22, 2009 to do so. Donatelli retained counsel, and an initial case management conference took place on July 27, 2009. Counsel entered his appearance and was given until August 17, 2009 to file an Amended Complaint. He failed to do so. He also failed to comply with the Court's Order to file the parties' stipulation selecting an ADR Process. This failure resulted in the threat of sanctions. [ECF No. 27]. Counsel still did not act, and on December 4, 2009, a Show Cause Order [ECF No. 35] was issued, which the Plaintiff ignored. Neither the Plaintiff nor his counsel appeared at the "twice noticed Status/Settlement Conference" scheduled

4

on January 15, 2010. [ECF No. 35]. A new date was set, and the Court ordered that "should Plaintiff's counsel fail to appear and/or to participate in good faith in the Status/Settlement Conference, this Court will recommend that the case be dismissed upon Plaintiff's failure to prosecute." [Id.]. At a post-discovery status conference held on February 5, 2010, the parties were directed to file a joint stipulation identifying claims in the original Complaint to be dismissed, and those remaining to be tried. [ECF No. 39]. The Court was informed by counsel for the Defendants that due to uncooperative, rude, and obfuscatory conduct on the part of Donatelli's attorney, a joint stipulation could not be agreed upon.[5] Nonetheless, the Defendants filed a Motion for Summary Judgment with supporting documents, to which the Plaintiff responded. [ECF No. 42]. While that Motion was pending, Donatelli's attorney was subject to professional disciplinary sanctions in an unrelated matter, and, as a result, was temporarily suspended from practicing in this and other courts. See [ECF No. 59]. This Court thus issued an Order staying the case for sixty days in order to enable Donatelli to engage new counsel. [Id.]. At the same time, the outstanding Motion for Summary Judgment was denied without prejudice to refiling after expiration of the stay. [Id.]. Donatelli was unable to find substitute counsel, and, following a status conference, the stay was lifted. [ECF No. 63]. The pending Motion for Summary Judgment was filed on January 21, 2011. Donatelli, again acting pro se, filed responsive documents. The Defendants' renewed Motion for Summary Judgment [ECF No. 66] is now ripe for review.

---

[5] The depositions included in the record clearly illustrate the type of unprofessional conduct to which counsel for Defendants referred.

## II.    STANDARD OF REVIEW

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586-87 (1986) (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

## III.    ANALYSIS

The theme uniting Donatelli's claims is that the Defendants "violated and continue to violate the FDCPA when they filed a lawsuit against Plaintiff and let it sit for over two years knowing that it lacked a proper evidentiary basis to support [it]." [ECF No. 72 at 2]. According to Donatelli, "the intention of the Defendant(s) was using the Mercer County Courts as an indirect debt collector as the one year absence of prosecuting the case proves that they had no

intention of prosecuting the case but simply filed the case in hopes of getting a default

judgment." [ECF No. 1 at ¶ 24]. According to Donatelli, the Defendants have failed to support

their Complaint with "proof that would be competent to support their claim that they have a valid

debt to collect from the plaintiff [,]" and should be held accountable for filing a baseless claim.

[ECF No. 72 at 3].

Against the background of the parties' arguments, the record, and the law, the Court must

determine whether Donatelli has succeeded in demonstrating that a genuine issue of material fact

exists. The Court turns first to the federal statutory claim.

A. **The Fair Debt Collection Practices Act**

"Congress made its purpose in enacting the FDCPA explicit: 'to eliminate abusive debt

collection practices by debt collectors, to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged, and to promote consistent

State action to protect consumers against debt collection abuses.'" Allen ex rel. Martin v.

LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011) (quoting 15 U.S.C. § 1692e). [6] "Alleged

violations of the FDCPA are to be examined from the perspective of the 'least sophisticated

consumer.'" Popson v. Galloway, No. 10-cv-77E, 2010 WL 2985945 at *3 (W.D. Pa. July 27,

---

[6] 15 U.S.C. § 1692a, defines the Act's key terms. A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." Id. at 1692a (3). A "creditor" is "any person who offers or extends credit creating a debt to or to whom a debt is owed . . . ." Id. at 1692a (4). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Id. at 1692a (5). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. at 1692a (6). "The Supreme Court has held that law firms and lawyers may qualify as 'debt collectors' if they regularly engage in consumer debt collection, even if their actions only involve litigation related activities." Popson v. Galloway, No 10-77E, 2010 WL 2985945 at * 3 (W.D. Pa. July 27, 2010) (citing Heintz v. Jenkins, 514 U.S. 291 (1995)).

2010) (quoting <u>Brown v. Credit Card Serv. Ctr</u>., 464 F.3d 450, 453 (3d Cir. 2006)). "The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." <u>Brown</u>, 464 F.3d at 454 (citation omitted).

"The FDCPA establishes a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993) (quoting 15 U.S.C. §1692e). "The sixteen subsections of § 1692e set forth a non-exhaustive list of practices falling within this ban." <u>Id.</u> Donatelli's FDCPA claims are based on multiple subsections, which the Court considers seriatim.

**15 U.S.C. § 1692e(2)(A)**

Donatelli asserts first that the Plaintiff in the state proceeding failed to produce any of the following: an executed application or agreement referring to HSBC, the alleged creditor, a statement of accounts showing a decrease in HSBC's "Net Worth Account" and a decrease in HSBC's asset account demonstrating the existence of consideration, an accounting ledger, and "a full disclosure statement" of expert witnesses, or their expected trial testimony.[7] [ECF No. 72 at 13, n.6, 7]. According to the Plaintiff, the Defendants have "done nothing to establish that the debt exists through the production of any competent proof," and have, therefore, violated the terms of section 1692e (2) (A). [<u>Id.</u> at 11]. Without citing supporting authority, the Plaintiff reasserts substantially similar allegations under other sections of 1692e, including 1692e (3)

---

[7] In support of this argument, Donatelli cites <u>Young v. Meyer, & Njus, P.A.</u>, No. 96 C 4809, 1997 WL 452685 at * 1 (N.D. Ill. Aug. 6, 1997). This case does not mention section 1692e (2) (A), and says nothing about the disclosure of testimony to be offered by expert witnesses.

[ECF No. 1 at ¶¶ 34, 37, 40, 41]; 1692e (4) [Id. at ¶¶ 34, 37, 38]; 1692e (5) [Id. at ¶¶ 34, 37, 40, 41, 58]; 1692e (10) [¶ 37, 40, 41]; and 1692e (13) [Id. at ¶¶ 34, 37].

The case law is, in fact, to the contrary. In Popson, the District Court addressed an issue virtually identical to the one framed by Donatelli. Popson alleged that the Defendant attorney "proceeded with the suit without documentation detailing the purchases, payments, interest, and late charges, making it impossible for [Popson] to determine whether or not he owed the alleged debt and if it was correctly calculated . . . ." 2010 WL 2985945 at *4. The Court found that these allegations did not state a claim under section 1692 in general, or section 1692e in particular:

> Initially, the only means [the Defendant attorney] is alleged to have used to collect the debt is the filing of a state court suit, an act which we find is not deceptive in nature . . . Plaintiff does not allege that the document attached to the state court filing was false; he does not even deny owing the debt. He merely alleges that [the] Defendant . . . did not attach the proper documentation required to substantiate the amount owed . . . "[He] essentially alleges that more of a paper trail should have been in the lawyer's hands or attached to the Complaint. The FDCPA imposes no such obligation."

Id. at *7 (quoting Deere v. Javitch, Block, and Rathbone LLP, 413 F. Supp.2d 886, 891 (S.D. Ohio 2006)). See also Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 332 (6th Cir. 2006) (stating that "a debt may be properly be pursued in court, even if the debt collector does not yet possess adequate proof of its claim.") Id. at 333. See also Clark v. Unifund CCR Partners, No. 07-0266, 2007 WL 1258113 at (W.D. Pa. April 30, 2007) (same). These cases dispose of virtually all of Donatelli's section 1692e (2) (A) claims. [8]

---

[8] They are dispositive, as well, of Donatelli's claims based on 15 U.S.C. § 1692e (13), which rest solely on the sufficiency of documentation supporting the state suit.

**1692e(3)**

Donatelli argues that section 1692e (2) (A) was violated in that the state court complaint filed against him was part of a "mass produced law suit that WWR has not personally reviewed the files [sic], and is not personally participating in the collection process but just simply signs the mass produced complaint. [ECF No. 1 at ¶ 38]. In support of this argument, Donatelli cites Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996). Although he relies on section 1692e (2)(A) in framing his argument, Avila was based, as is the real substance of Donatelli's argument, on an alleged violation of 1692e (3) [9] In Avila, Van Ru Credit Corporation ("VRCC"), a collection agency, had an inextricable relationship with Attorney Rubin ("Rubin"), the owner of eighty per cent of VRCC stock. Rubin's law offices, Rubin & Associates ("R&A"), were engaged primarily in the business of "send[ing] form letters to delinquent debtors urging them to pay their debts and [referring] the files of delinquent debtors to other attorneys for litigation." Id. at 224. Rubin maintained offices at both VRCC and R&A, dividing his time between the two. The enterprises shared computers, internal account numbers and the same automated telephone system to call delinquent debtors. They received mail at the same location, and used the same printer and folding machine for their respective form letters, mixing these letters in stacks of identical envelopes for mailing. Id. Although VRCC and R&A "utilize[d] the same computer system, [VRCC] employees d[id] not issue [R&A] letters or input data into a debtor's file after it [wa]s transferred to [R&A]. Once a file [wa]s referred to [R&A], [VRCC] employees generally d[id] not pursue collection activities against the debtor." Id. Letters from Rubin demanding

---

[9] This section prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." Donatelli makes the identical argument in the portion of his brief alleging violations of section 1692(3).

payment were not personally prepared, signed, or reviewed. It was the "legal assistant debt collectors" who used their skill and judgment to determine when a letter should be sent. (Id. at 225). Rubin was found to have violated the terms of 1692(e)(3).

Donatelli argues that the same result should obtain here as there was a "false representation or implication that the entire file ha[d] been thoroughly examined by an attorney and that all communications [were] from an attorney." [ECF. No. 1 at ¶ 31]. At his deposition, however, Warmbrodt testified that although the complaints filed by his firm were templates, before signing them – and before signing the one against Donatelli in particular – he "would have reviewed the document and the attachment to determine if the information in the complaint was consistent with the information provided by [his] client, and then if it was, [he] would have signed it." [ECF No. 65-8 at 18-19].

Though there are some similarities between the collections operation described in Avila, and the one at issue here – for example, the use of template documents to process large numbers of accounts due – there are also critical differences. Warmbrodt testified that he reviewed the correspondence and the attached evidence of the debt, making sure that the two were consistent. In his capacity as an attorney, he personally signed the document. Warmbrodt's "skill and judgment" - though admittedly not much of either was required - were brought to bear on the letter sent to Donatelli. Avila, 84 F.3d at 225. It is this personal – albeit minimal - attention on Warmbrodt's part that renders the holding in Avila inapplicable. [10] Accordingly, the Court finds

---

[10] This is not a case where the record shows, as it did in Boyd v. Wexler, 275 F.3d 642, 648 (7th Cir. 2002) that a genuine issue of fact was created where, despite an attorney's representation that he or one or two other attorneys approved every form claim letter that went out of his office, "[I]n a recent eight-and-a- half-month period, [his] firm sent out 439,606 pieces of mail . . . consist[ing] overwhelmingly of collection letters." Id. at 644-45. The Court found that this volume of mail rendered implausible the attorney's testimony that he personally reviewed the plaintiffs' files:

> A reasonable jury informed of the size of the firm and the duties of
> the three lawyers, which leave them little time for review of collection
> files, informed also of the circumstances from which an estimate can
> be made of the time that it takes a lawyer to review such a file with
> sufficient care to be able to make a responsible professional judgment
> that a legally collectible debt is owing, and informed finally of the
> enormous mass of mailings, most apparently of collection letters
> in relation to the number and available time of Wexler's tiny legal
> staff, could rationally conclude that Wexler's claim to have reviewed
> these plaintiffs' files was false, that he had not reviewed them (nor
> had any other lawyer), and therefore that he had violated the Act.

Id. at 647.

Donatelli attempts to bring this case within the holding in Boyd, through the affidavit of Michael Paoletta, a 1980 graduate of Youngstown State University with a Bachelor's Degree in Management. [ECF No. 80-4 at ¶ 2]. Paoletta states that he has "reviewed the pleadings and evidence in this case, and, if called as a witness, would testify that "if Donatelli ever signed any instrument (s) of indebtedness with HSBC, then HSBC has committed conversion and monetized the fraudulently created debt obligation of Donatelli." [Id. at ¶10]. This testimony is irrelevant to the matter before the Court. Whether Donatelli actually owes the debt as alleged is not at issue, nor is HSBC a Defendant.

Paoletta also contends that he has reviewed "hundreds of dockets of collections proceedings filed by the Defendants in this case throughout the middle states," and that "this firm uses form complaints and robo-signers for their verifications." [Id. at ¶26.]. He states that he has attached a small portion of these complaints,– filed from 2003 forward – contending that they are identical in most respects to the complaint filed against Donatelli. [Id.]. Finally Paolotta has attached "a listing of all other cases in which these Defendants are being sued in the federal courts "all over the Federal Districts in this Country." [Id.]

The evidence adverted to here is significantly different from that in Boyd. It tells the Court nothing about the total volume of collection cases filed by these Defendants during a relevant time period. Furthermore, the similarity in complaints does not mean that Warmbrodt and his partner did not engage in personal review of the complaints and the verifications. The evidence which Paolotta purports to possess is simply not sufficient to raise a question of material fact with respect to any of the claims made under the FDCPA.

The Court notes that Paolotta has also incorporated in his Affidavit a tome dealing with vicarious or creditor liability issues. Donatelli did not raise these claims in his Complaint, nor address them in discovery. See Tucker v. Union of Needletrades, Indus., & Textile Emp., 407 F.3d 784 (6th Cir. 2005) (observing that plaintiff may not raise new claim in response to summary judgment motion) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

that this aspect of the conduct alleged did not violate sections 1692e (2)(A) or 1692e (3). [11]

**1692e (4)**

The Plaintiff's arguments here again focus on the adequacy of the evidence supporting and the documents attached to the state court complaint. The Court need not revisit these, but turns instead to the allegation that the Defendants, in a communication with Donatelli, "made fraudulent misrepresentation that WWR would take possessions from [him] by filing a frivolous complaint." [ECF No. 1 at ¶ 57]. Section 1692e (4), "in relevant part prohibits a debt collector from representing or implying that nonpayment of a debt will result in the sale of any property" 'unless such action is lawful and the debt collector or creditor intends to take such action.'" Cook v. Chase Manhattan Mortg. Corp., No. 07-4089, 2007 WL 4205870 at *3 (10th Cir. Nov. 29, 2007) (quoting Cook v. Chase Manhattan Mortg. Corp., 509 F.Supp.2d 986, 998 (D. Utah 2007)). The Court has examined the record, and the only reference arguably relevant to Donatelli's section 1692e (4) claim is the form notice attached to the Court of Common Pleas Complaint, notifying Donatelli that a complaint has been filed against him and that one of the consequences of failing to respond was that judgment could be entered against him for money claimed in the complaint. "You may lose money or other rights important to you." [ECF No. 65 Ex. 3 at 2]. The address and phone number for the Mercer County Lawyers Referral Service followed. Donatelli has not cited, and the Court has not located, case law construing such a notice as violating the terms of 1692e (4). The Court is not persuaded to do so here.

Donatelli also claims that Warmbrodt violated the provisions of 1692e (4) "by attempting to collect on a debt that Attorney has not proved that the real Creditor has authorized the attorney

---

[11] The remainder of Donatelli's arguments raised under 1692e (3) are duplicative of those made and addressed in the context of section 1692e (2) (A).

taking of any legal action. [sic]" [ECF No. 72 at 28- 29].  Aside from citing an unpublished 1983

case, Gasser v. Allen County Claims & Adjustment, Inc., 1983 U.S. Dist. LEXIS 20361 (N.D.

Ohio Nov. 2, 1983), without accompanying analysis, Warmbrodt provides no support for his

argument.  Nor does he confront the legal authority already discussed by this Court establishing

that insufficient evidence or documentation claims based on the filing of a state court complaint

do not constitute viable claims under section 1692e.  See e.g., Deere, 413 F. Supp.2d at 891.

Donatelli has not provided this Court with – nor has the Court found - case law

supporting the proposition that state court evidence should be assessed in the context of federal

litigation, or that such evidence must be presented and evaluated at the time a state collections

suit is filed in order to avoid running afoul of the FDCPA.  See Jenkins v. Centurion Capital

Corp., No 07 3838, 2009 WL 3414248 at *3 (N.D. Ill.  October 20, 2009) ("The Seventh Circuit

has suggested that the FDCPA does not control pleading requirements in state court; rather that

matter is left to the discretion of the state court.") (citing Beler v. Blatt, Hasenmiller, Leibsker &

Moore, LLC, 473 (7th Cir. 2007) (stating that state rules of procedure, not federal law, determine

pleading requirements)).

### 1692e (5)

This section of the FDCPA makes it illegal to threaten "to take any action that cannot

legally be taken or that is not intended to be taken."  In contending that this section has been

violated, Donatelli again relies on the purported inadequacy of evidence supporting the state

court claim.  The Court has considered virtually all of these arguments under other provisions of

section 1692e and has found them to be without merit.  So too, here.  The Court turns, therefore,

to arguments that do not depend on the sufficiency of the evidence.

The first of these is Donatelli's assertion that the Defendants violated section 1692e (5) when they took legal action that could not be legally taken by filing a state court complaint and failing to pursue that claim. [ECF No. 1 at ¶32]. Donatelli is convinced – and is determined to convince the Court – that the state court complaint was filed without any intention of prosecution, given that there was insufficient admissible evidence to bring the claim to a successful conclusion. [Id. at ¶ 58]. According to Donatelli, the Defendants , by filing suit against him in state court, used that court "as an indirect debt collector as the one year absence of prosecuting the case proves that they had no intention of prosecuting the case[,] but simply filed the case in hopes of getting a default judgment." [ECF No. 1 at ¶ 24].

The essence of this argument was rejected in Deere , 413 F. Supp. 2d at 890. There, the debtor Defendant argued that the Plaintiff bought defaulted debt for pennies on the dollar, and routinely filed state court collection actions on which the default rate was at least ninety percent. If a debtor did contest the debt, the suit was routinely dismissed "based on the economics of pursuing a judgment in those circumstances." Id. The Court found that these facts had not been properly alleged in the complaint, but, in any event, did not support a reasonable inference that filing suit violated the FDCPA. Id. "A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or though discovery." Id. at 891.

**1692e(8)**

This section prevents a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be

15

false, including the failure to communicate that a disputed debt is disputed." Id. In his

Complaint, Donatelli alleges that the Defendants placed false and derogatory information on his

credit report concerning a disputed debt. [ECF No. 1 at ¶ 47]. The Court has searched the record

in vain for evidence supporting this contention.

Donatelli makes an alternate claim under section 1692e (8) : "Defendant's [sic] ignored

Plaintiff's verbal and written dispute of the alleged debt and failed to properly report the disputed

debt [to the credit bureau]." [ECF No. 72 at 16-17]. This claim, too, fails. "[T]here is no

authority to support the proposition that a debt collector must inform the credit reporting agency

that the consumer disputes the debt." Benson v. Med-Rev Recoveries, Inc., 445 B.R. 445, 449

(E.D. Pa. 2010). The Court of Appeals for the Eighth Circuit elaborated on why this is so:

> Section1692e generally prohibits "false, deceptive, or
> misleading representation." "Communication" is defined
> as "the conveying of information regarding a debt directly
> or indirectly to any person through any medium." §1692(a) (2).
> Reading these provisions together, as we must, the
> relevance of the portion of 1692e (8) on which [the
> Plaintiff] relies "including the failure to communicate that
> a disputed debt is disputed" – is rooted in the basic fraud
> law principle that, if a debt collector *elects* to communicate
> "credit information" about a consumer, it must not omit
> a piece of information that is always material, namely,
> that the consumer has disputed a particular debt. This
> interpretation is confirmed by the relevant part of the
> Federal Trade Commission's December1988 Staff
> Commentary on the Fair Debt Collection Practices Act:
>
>   1. Disputed debt. If a debt collector knows that a debt
> is disputed by the consumer . . . *and reports it to a credit*
> bureau, he must report it as disputed.
>
>   2. Post-report dispute. *When a debt collector learns of*
> *a dispute after reporting the debt to a credit bureau, the*
> *dispute need not also be reported.*

<u>Wilhelm v. Credico, Inc.</u>, 519 F.3d 416, 418 (8th Cir. 2008) (emphasis in original) (quoting FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13 1988)).  Because Donatelli has failed to establish that the Defendants reported a debt to a credit bureau, his assertion that they are liable for failing to report that the debt was disputed is inaccurate.

**1962e (10)**

Section 1962e (10) is a "catch-all" provision prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e (10); <u>see</u> <u>Clomon</u>, 988 F.2d at 1320.

Donatelli's primary argument with respect to this section is that in paragraph six of the state court complaint, "WWR has tried to mislead the lower court [sic] by making a bald allegation . . . that "Plaintiff is entitled to the addition of interest at the rate of 6.000% per annum on the unpaid balance from June 22, 2007."  [ECF No. 1 ¶ 43].  According to Donatelli, this allegation represents an attempt to violate his due process rights by introducing false information, and does not constitute sufficient evidence under federal or state rules.  He does not pursue this argument in his brief.  [<u>Id.</u>]  As the Court has already observed in another aspect of this litigation, Donatelli has not provided this Court with authority for the proposition that the inclusion of a calculation of state statutory interest in a demand for relief in state court would be confusing to a state court, or that it would it be actionable under the FDCPA in any event. Whether the state court plaintiffs are entitled to this or any other rate of interest is an issue to be resolved in the state court. [12]

---

[12] In his brief, Donatelli devotes a great deal of attention to the argument that the state Plaintiffs failed to set out in the state court complaint the elements of a breach of contract "or an account stated theory." [ECF No. 72 at 32-33].  He argues that these pleading deficiencies violate FDCPA section 1962e (10), and are thus appropriate for consideration in a federal forum.  He has also failed to establish that any

The identical analysis applies to Donatelli's focus on the allegation in the state complaint that he failed to make monthly payments on credit card debt. He states that this contention "is a great injustice and assumes facts not introduced as evidence to substantiate any debt at this time. This improper action of WWR has violated §1692e (10)" [Id. at ¶ 42]. Again, in the absence of authority to the contrary, the Court concludes that whether Donatelli failed to make monthly payments on a debt for which he was responsible is an evidentiary matter to be assessed in the state proceedings.

## 1692d (1)

According to Donatelli, the Defendants "have engaged in litigation with [him] for over three years without ever producing any competent admissible evidence that would withstand an objection in court on admissibility and/or hearsay." [ECF No. 72 at 12]. He goes on to say that filing a law suit absent evidence combined with the Defendants' harassing, abusive and oppressive mode of operation in violates 15 U.S.C. § 1692d(1). The conduct alleged by Donatelli does not fall within the parameters of section 1692d. This section provides that the FDCPA is violated by the use or threat of use of "tactics intended to embarrass, upset, or frighten a debtor." Harvey, 453 F.3d at 330. These include, among other things, the use of obscene or profane language, repeated telephone calls, publication of a list of debtors, and the use of violence or criminal means to collect a debt. 15 U.S.C. § 1692d (1)-(6). "In contrast, the issues in the present case do not concern coercion, scare tactics, or fraud, but involve the simple filing of a lawsuit, which is an authorized method of collecting a debt." Harvey, 453 F.3d at 330.

---

aspect of the state proceedings violated his rights under the Fourteenth Amendment of the United States Constitution. The Court agrees with the Defendants that the state case is proceeding apace, that "Donatelli has had every opportunity to respond to, and defend against the state court lawsuit," and that that the essence of the issues he raises here must be resolved there. [ECF No. 67 at 9].

Moreover, insofar as Donatelli's claim is based on the fact that the Defendants took no action after the state court complaint was filed, it is important to recognize that he had avenues of recourse available to move the case forward. "A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery." <u>Deere</u>, 413 F. Supp. 2d at 891. [13]

**1692f (1)**

This section prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Donatelli alleges six violations of this section, four of which challenge again the adequacy of the evidence supporting the state court suit. [ECF No. 65 at ¶¶ 34, 35, 37, 41]. Under this section, too, the evidentiary arguments lack merit.

The Plaintiff next alleges that the Defendants attempted to collect sums not authorized by law, complaining that the state court complaint alleges a balance due of $16,532.98, while the statement of account attached thereto shows a balance of $16,283.64. [<u>Id.</u> at ¶41]. The statement of account is dated February 25, 2007, and reflects the amount due on that date. By the time the state court complaint was filed in August 2007, the debt balance – assuming that no payments had been made – would have increased due to finance and overlimit charges as

---

[13] Insofar as Donatelli complains that he was prevented from conducting effective discovery during the course of this proceeding, the record fails to support him. There is no evidence that he ever sought additional discovery, or communicated to the Court the need for such. The same is true regarding allegations that the Defendants impeded discovery.

described on the statement of account.  On these facts, the Court does not find that Donatelli has

established a violation of section 1692(f). [14]

**1692(g)**

> Section 1692g was intended to provide a means by which relevant
> information could be exchanged between the debtor and debt
> collector in a cost effective manner. Under § 1692g a debtor must
> be notified in writing that he can dispute the validity of a debt, or
> any portion of it, and demand verification of the debt's existence.
> 15 U.S.C. § 1692g (a). Through this process, the debt collector
> learns whether the debt is contested and the reasons, if any, for
> the debtor's refusal to pay.

Hubbard v. Nat'l Bond and Collection Assoc., Inc., 126 B.R. 422, 428 (D. Del. 1991).  No later

than five days after a debt collector makes initial contact with a consumer regarding the

collection of a debt, the collector must provide the consumer with written notice specifying the

amount of the debt, the name of the creditor, notification that unless the consumer disputes the

validity of the debt in writing within thirty days, it will be deemed valid, a statement that if the

consumer disputes all or part of the debt, the collector will secure verification of the debt or a

copy of the judgment against the consumer, and will mail either to the consumer.  The collector

must also notify the consumer that if the consumer makes a written request during the thirty day

period, the collector will make available to the consumer the name and address of the original

creditor if this differs from the current creditor.  If the consumer files a dispute or requests

---

[14]At Paragraph 36 of his Complaint, Donatelli argues that section 1692(f) was violated because the
complaint in the state matter was based upon false information and, consequently, a fraud was committed
upon that court.  He does not point to evidence supporting this argument, nor does he discuss it in his
brief.  In his brief in Opposition to the Motion for Summary Judgment, Donatelli argues, for the first time,
that section 1692f (1) was violated because "[t]he defendants were never specifically authorized to file a
law suit for the alleged creditor [.]  HSBC has monetized securitized, which converted it into a [sic] asset
back [sic] security. . ." [ECF No. 72 at 18 n.17].  He states that this can be proven through expert
testimony and discovery. The deadline for discovery is long past. The Court will not re-open discovery,
nor will it consider discovery materials submitted by the Plaintiff after that deadline.

information regarding the creditor, the collector is obligated to halt collection of the debt, or the disputed portion of the debt, until a copy of the verification or judgment is obtained and mailed to the consumer. See Mike Voorhees & Sharon Voorhees, Overview of the Fair Debt Collection Practices Act and Other Collection Issues, 62 Consumer Fin. L. Q. Rep. 205, 215 (2008). See also Quale v. Unifund Partners, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010).

"[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." Chaudry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). "[V]erification is only intended to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No 95-382, at 4, reprinted in U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." Id. (internal citations omitted).[15]

It is undisputed that on or about December 15, 2006, WWR sent Donatelli a letter demanding payment of the account in question, [16] and that, on or about December 20, 2006, Donatelli sent WWR a notice of dispute. [ECF No. 1 at ¶¶ 16, 17; ECF No. 64 at ¶18]. The parties also agree that WWR sent Donatelli a debt verification response dated April 6, 2007. [ECF No. 64 at ¶ 18; ECF No. 65-5 at 49]. Although it is not completely clear, Donatelli appears to argue that the

---

[15] In his filings, Donatelli alludes to documents showing that the debt in dispute has been "Paid in Full." [ECF No. 72 at 12 n.3]. These documents are conspicuously absent from the record.

[16] At Paragraph 55 of his Complaint [ECF No. 1], Donatelli alleges that in this December 15 letter - which he has failed to place in the record - WWR violated section 1692(g) by failing to notify him within five days of its first communication with him, that he had the right to request validation or verification of the debt. While it is impossible for the Court to credit Donatelli's bare assertion, the Court does note that Donatelli, in fact, did request verification within five days of receiving WWR's letter, suggesting that he was not misled or deprived of his rights by any omission in its contents.

verification should have been supported by original documents, a requirement that appears nowhere in the FDCPA or in the case law. He also alleges that WWR violated section 1692g "by taking legal action during the debt validation request period that over shadowed the notice of validation rights and would create confusion for the least sophisticated consumers about their rights," and "by continuing its debt collection efforts within thirty days of receiving first notice." [ECF No. 1 at ¶¶ 48, 49]. The Plaintiff does not point to and the Court has not found evidence in the record to support either of these claims.

## B. **The State Claims**

For the reasons set out in detail with respect to each section of the FDCPA upon which Donatelli relies, the Court finds that the Defendants are entitled to summary judgment on all claims arising under federal law. The remaining claims are state law claims. The District Courts' jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court has discretion to decline to exercise supplemental jurisdiction, however, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c) (3). The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court *must* decline to decide the . . . state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir.2000) (quoting Borough of West Mifflin v.

Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis in original)).  Finding no such justification, the Court will dismiss the state law claims without prejudice.

IV.     **CONCLUSION**

For the reasons set out above, the Defendants' Motion for Summary Judgment will be granted with respect to the federal claims.  The state claims will be dismissed without prejudice to their being considered in state proceedings.  Appropriate Orders follow.

By the Court,

s/ Terrence F. McVerry
Terrence F. McVerry
United States District Judge

Dated:  June 29, 2011

cc:     Counsel of Record Via CM/ECF

Mr. Robert Donatelli
306 Pierce Avenue
Sharpsville, PA          16150